**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

RED ROCK ANALYTICS, LLC,     §
                             §
      *Plaintiff*,          §
                             §
v.                           §    Case No. 2:17-CV-00101-RWS-RSP
                             §
SAMSUNG ELECTRONICS CO., LTD.,  §
SAMSUNG ELECTRONICS AMERICA,  §
INC., SAMSUNG SEMICONDUCTOR,  §
INC., and SAMSUNG AUSTIN      §
SEMICONDUCTOR, LLC,         §
 
      *Defendants*.

## <u>MEMORANDUM ORDER</u>

In this patent case, Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor, LLC ("Samsung") move to exclude certain opinions of Roy Weinstein and Dr. Christopher Jones, Plaintiff Red Rock Analytics, LLC's ("Red Rock") damages and technical experts, respectively. [Dkt. No. 149].[1]

Weinstein quantifies damages allegedly due to Red Rock considering both the scheduled date of trial and the expiration date of the patent-in-suit. Weinstein Rep., ¶ 200. Weinstein opines that Red Rock is entitled to at least $75.9 million in reasonable royalty damages up to the expected date of trial for the alleged infringement of Red Rock's patent, U.S. Patent No. 7,346,313. *Id.* at ¶¶ 11, 209. To determine the value of the '313 patent's technology, Weinstein relies on Dr. Jones's

---

[1] Red Rock filed a response, [Dkt. No. 160], Samsung filed its reply, [Dkt. No. 173], and Red Rock filed its sur-reply, [Dkt. No. 187].

findings regarding the '313' patent's effect on error vector magnitude ("EVM"). *Id.* at ¶ 143; [Dkt. No. 149-9].

Samsung contends that both Weinstein and Dr. Jones's opinions are products of unreliable methods, and thus should be excluded under Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed. 2d 469 (1993).

## I.   LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c)  the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under Rule 702 and *Daubert*, "'a district court has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion.'" *Johnson v. Arkema*, 685 F.3d 452, 458-59 (5th Cir. 2012) (quoting *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 354 (5th Cir. 2007)). The court must act as a gatekeeper, ensuring that admitted evidence is reliable and relevant.  *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999) (citing *Daubert*, 509 U.S. at 592-93, 597, 113 S. Ct. at 2796, 2799). Accordingly, the Court's gatekeeping function involves a two-part inquiry into reliability and relevance. *In re Pool Prod.*

*Distribution Mkt. Antitrust Litig.*, 166 F. Supp. 3d 654, 661 (E.D. La.), *appeal dismissed* (5th Cir. Oct. 27, 2016).

As to the reliability inquiry, the proponent of the expert's opinion testimony need not prove that the expert's testimony is *correct* – the proponent need only prove by a preponderance of the evidence that the testimony is *reliable*.  *Johnson*, 685 F.3d at 459 (emphasis added); *see also i4i Ltd. v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010) *aff'd*, 564 U.S. 91, 131 S. Ct. 2238, 180 L. Ed. 2d 131 (2011) ("*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness."). The expert opinion must be grounded in the methods and procedures of science – the opinion must go beyond unsupported speculation or subjective belief. *Daubert*, 509 U.S. at 590, 113 S. Ct. 2786. The court's "focus, of course, must be solely on principles and methodology, *not* on the conclusions that they generate." *Id.* at 595, 113 S. Ct. 2786 (emphasis added).

In determining if expert testimony is reliable, courts consider the following flexible, non-exhaustive list of factors:

> (1) whether the theory or technique has been tested;
> (2) whether the theory or technique has been subjected to peer review and publication;
> (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and
> (4) whether the theory or method has been generally accepted by the scientific community.

*Johnson*, 685 F.3d at 459 (citing *Curtis*, 174 F.3d at 668-69 (citing *Daubert*, 509 U.S. at 593-94, 1113 S. Ct. 2786)). Rule 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data

3

would otherwise be inadmissible, the proponent of the opinion may
disclose them to the jury only if their probative value in helping the
jury evaluate the opinion substantially outweighs their prejudicial
effect.

Fed. R. Evid. 703.

Pursuant to these rules, "a district court may exclude evidence that is based upon unreliable

principles or methods, legally insufficient facts and data, or where the reasoning or methodology

is not sufficiently tied to the facts of the case." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d

1283, 1295 (Fed. Cir. 2015).

## II.   DISCUSSION

Samsung moves to exclude portions of Weinstein's and Dr. Jones's opinions on four bases:

(1)  Samsung argues that Weinstein's calculated damages through the '313 patent's expiration are

based on guesswork, not evidence; (2) Samsung argues that Weinstein's apportionment analysis

is unreliable because he relied on a licensing program that was rejected by the Federal Circuit as

being impacted by standardization; (3) Samsung argues that Weinstein relied on Dr. Jones's

analysis, where Dr. Jones's analysis was unreliable because he failed to apportion the purported

value of the '313 patent; and  (4) Samsung argues that Weinstein, in performing his analysis under

*Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y.1970), disregards

evidence that Samsung's prior agreements do not involve running-royalty payments.

### A.  Weinstein's Damages Calculation Through the Patent Expiration Date

Weinstein provides two models in his report: a term lump sum license for the accused

products through trial and fully-paid lump sum license for the accused products through the

January 2025 expiration of the '313 patent. Weinstein Rep., ¶¶ 200-206. Samsung argues that

Weinstein's fully-paid lump sum calculation is unreliable because he holds constant Samsung's

sales of accused products during 2017 and projects those sales figures through patent expiration

4

without supporting evidence. [Dkt. No. 149], 4-5; *see also* Weinstein Rep., Ex. 14.  Samsung contends that Weinstein failed to consider the possibility of decreases in overall market size or in Samsung's share of that market. [Dkt. No. 149], 9.

Red Rock responds that Weinstein testified that he accounts for potential increases and decreases of accused models by holding the sales constant. [Dkt. No. 187], 1; *see also* Weinstein Dep., [Dkt. No. 149-13], 55:3-14; 63:17-21. Red Rock argues that Weinstein also has not yet received additional information from Samsung, and that his projection of future sales will be updated when Samsung provides updated sales data through the end of 2018, as Samsung agreed. [Dkt. No. 160], 3. Red Rock contends that Weinstein will adjust his future projections in view of the updated data. *Id.*

Samsung's arguments are unpersuasive. As the Court has noted before, "a lump sum royalty includes compensation for projected future infringement … The lump sum may be based on developments that have occurred after the date of the hypothetical negotiations, including realistic projections of future sales." *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, 2018 WL 3089701, at *7 (E.D. Tex. Mar. 7, 2018). Weinstein seeks to a make a realistic projection of future sales, a period of 7 years, by using the additional sales data. Even if the figures were to remain constant once the sales data is received, Samsung makes no showing as to why Weinstein's methodology is purely speculative. Accordingly, Samsung's motion is **DENIED** on this ground.

### B.  Weinstein's Apportionment Analysis Concerning the 802.11 Standard

Weinstein relied upon, *inter alia*, the following CSIRO licenses in his *Georgia-Pacific* analysis: the CSIRO-ASUStek and CSIRO-Fujitsu licenses entered into in April 2009 and the

CSIRO-Samsung license entered into in January 2015 (the "CSIRO Licenses"). Weinstein Rep., Exs. 6, 11. Samsung contends that the CSIRO Licenses predate the Federal Circuit's decision in *CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295 (Fed. Cir. 2015), and that the CSIRO Licenses rates fall within the range that the Federal Circuit directed the district court to analyze for the value of the standard-essential patent. [Dkt. No. 149], at 10. According to Samsung, the Federal Circuit in *CSIRO* ordered special scrutiny of royalty rates between $0.90 and $1.90 per unit, and Weinstein's methodology calculates the average royalty rate received by CSIRO for the '069 patent to be $0.92 to $1.09 per unit. [Dkt. No. 173], 2. Samsung contends that Weinstein should have apportioned the CSIRO Licenses' patent for its value of standardization. *Id.*

Red Rock responds that there is no evidence that the CSIRO Licenses were impacted by standardization. [Dkt. No. 160], 4. Instead, Red Rock contends, Weinstein correctly relies on real-world licenses that reflect the actual negotiation of the patent's value. *Id.*; [Dkt. No. 187], 2. Red Rock further argues that Samsung cannot ask that Weinstein apportion an actual license because of standardization because licensing parties may not have agreed that a licensed patent was indeed standard essential. [Dkt. No. 187], 3.

Many of these arguments are really about comparability, more so than apportionment. Apportionment concerns what part of the infringing features are incorporated into the accused products, whereas comparability concerns whether the CSIRO Licenses are a good measure of the value of the patented invention. Samsung appears to contend that the CSIRO Licenses may not be comparable because those licenses incorporate a standards-essential patent. However, Samsung does not show that any comparison is improper.  The Court finds the following Federal Circuit guidance applicable:

> A party may use the royalty rate from sufficiently comparable licenses, value the infringed features based upon comparable

6

features in the marketplace, or value the infringed features by comparing the accused product to non-infringing alternatives. … A party may also use what this court has referred to as "the analytical method," focusing on the infringer's projections of profit for the infringing product. … All approaches have certain strengths and weaknesses, and, depending upon the facts, one or all may produce admissible testimony in a particular case. <u>Because each case presents unique circumstances and facts, it is common for parties to choose different, reliable approaches in a single case and, when they do, the relative strengths and weaknesses of each approach may be exposed at trial or attacked during cross-examination</u>. That one approach may better account for one aspect of a royalty estimation does not make other approaches inadmissible.

*Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) (internal citations omitted) (emphasis added); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1326 (Fed.Cir.2014) ("Here, whether these licenses are sufficiently comparable such that Motorola's calculation is a reasonable royalty goes to the weight of the evidence, not its admissibility."). Here, the Court finds that Weinstein's comparison of the licenses is a matter appropriately left to be challenged on cross-examination.[2] Samsung's motion is thus **DENIED** on this ground.

### C.  Dr. Jones's Apportionment Analysis Concerning the '313 Patent Value

Samsung's next argument concerns both Weinstein and Dr. Jones's analysis. According to Samsung, Weinstein states that using I-Q calibration results in an EVM improvement, and this improvement enables certain data modes specified in the 802.11n and 802.11ac WiFi standards. [Dkt. No. 149], 2 (citing Weinstein Rep., ¶¶ 143-47, 183). Samsung points out that Weinstein relies on Dr. Jones's expert report, where Dr. Jones failed to apportion the value of the ''313 patent.

---

[2] Further, Samsung  misconstrues the *CSIRO* decision. The Court does not read the *CSIRO* decision to state that rates falling between $0.90 and $1.90 per unit always demand special scrutiny. Rather, the Federal Circuit in *CSIRO* was more concerned with whether the rates were adjusted upwards simply because the patent was standard-essential. 809 F.3d at 1305 ("The district court – which did not have the benefit of the *Ericsson* [*v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014)] opinion at the time of its decision – erred because it did not account for standardization. In thoroughly analyzing the *Georgia-Pacific* factors, the district court increased the royalty award because the '069 patent is essential to the 802.11 standard."). Here, it does not appear that Weinstein increases the royalty rate based on standardization nor does it appear that he adjusts any of the *Georgia-Pacific* factors upwards based on standardization.

[Dkt. No. 149], 11. Samsung argues that Dr. Jones's analysis, and subsequently Weinstein's relying thereon, is thus unreliable in two ways.  The Court will address each argument in turn.

### i. *Dr. Jones's Analysis Regarding Prior Art*

First, Samsung argues that Dr. Jones should have apportioned the '313 patent to subtract out prior art that relates to I-Q gain calibration. [Dkt. No. 149], 11. Samsung contends that Dr. Jones assigns to the '313 patent the EVM improvement achieved by calibration and other general design techniques, rather than the specific improvement in EVM achieved by the '313 patent. *Id.*

Red Rock argues that Dr. Jones isolates the performance improvement attributable to the '313 patent alone in his report. [Dkt. No. 160], 6. Red Rock contends that Dr. Jones did consider the prior art, and found that the prior art's "calibration process … fails to account for the mixer gains" that are substantial sources of I-Q gain imbalance. *See id.* at 9 (citing Jones Rpt., [Dkt. No. 160-11], ¶ 88). Thus, according to Red Rock, Dr. Jones found that the prior art calibration process would not be acceptable and, in fact, would be less preferable than performing no calibration at all. *See id.* at 9 (citing Jones Rpt., [Dkt. No. 160-11], ¶ 88).

Where multi-component products are involved, the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) (citing *VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308 (Fed.Cir.2014)). The Federal Circuit has consistently held that "a reasonable royalty analysis requires a court to … carefully tie proof of damages to the claimed invention's footprint in the market place." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed.Cir.2010).

Here, the Court finds that Dr. Jones's analysis discusses the claimed invention's footprint in the market place, and thus Weinstein's damages analysis is properly tied to that proof. The heart

of Samsung's disagreements lies with Dr. Jones's conclusions, not his methodology. However, the Court is focused on the methodology, not Dr. Jones's conclusions, and the Court finds Dr. Jones's methodology is reasonable given the facts of the case, and is within the bounds of reliability. "When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship*, 598 F.3d at 852 (citing *Knight*, 482 F.3d at 351 and *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc)); *see also Johnson*, 685 F.3d at 459. Because Weinstein relies on Dr. Jones's analysis, Weinstein's opinions are not excluded. Accordingly, Samsung's motion is **DENIED** on this ground.

## ii.   *Dr. Jones's Analysis Regarding Non-Infringing Aspects*

Second, Samsung argues that Dr. Jones failed to apportion the value of the '313 patent among the non-infringing aspects of WiFi transceiver design that also affect EVM. [Dkt. No. 149], 12. Samsung contends that Dr. Jones admits there are at least four categories of factors other than I-Q gain imbalance that are important to transceiver EVM and contribute to EVM degradation, but he failed to assess technologies relating to those factors: (1) I-Q phase imbalance, (2) non-linearity, (3) DC offset, and (4) quantization error. *Id.* at 13. Thus, Samsung argues that Dr. Jones's opinions that the '313 patent enables standards compliances and enables certain data-rate modes are unreliable. *Id.* at 14.

Red Rock responds that Dr. Jones isolated the EVM improvement calculations to take into account the other factors, and isolated the minimum amount of EVM improvement that can be attributed exclusively to I-Q gain imbalance calibration. [Dkt. No. 160], 9 (citing Jones Rpt., [Dkt. No. 160-11], ¶ 469).

The Court does not find Samsung's arguments persuasive on this point. Weinstein explicitly accounts for DC offset, phase imbalance, and non-linearity. Weinstein Rep., ¶ 462 ("[A]s I discussed above, these [other possible EVM distortions] can include DC offset, phase imbalance, and PA non-linearity[.]"). Indeed, Paragraph 469 of Dr. Jones's Report reads:

> The "Best Tx EVM" column uses the final aggregate transmit EVM measurement. This aggregate number includes all sources of error, not just I-Q gain imbalance. As I explained previously, transmit EVM is limited by the worst source of transmit error. The final transmit EVM due only to I-Q gain imbalance calibration, with all other non-idealities (e.g., phase imbalance, DC offset, PA nonlinearity) removed, is almost certainly better than the numbers described above. However, the EVM improvement due to transmit gain imbalance must be at least as good as the levels described in the table above in order to achieve the aggregate (all non-idealities included) levels shown.

Jones Rpt., [Dkt. No. 160-11], ¶ 469. Weinstein testified that he never excluded the notion that the other factors must be corrected. Weinstein Dep., [Dkt. No. 160-13], 120:5-121:16. Samsung has not shown that Dr. Jones's isolation of the I-Q gain calibration factor is unreliable. Here, as with Samsung's concerns with Dr. Jones's prior art analysis, the heart of Samsung's disagreements lies with Dr. Jones's conclusions, not necessarily his methodology. Weinstein's opinions, undergirded by Dr. Jones's analysis, should similarly not be excluded. The Court thus **DENIES** Samsung's motion on this ground.

### D.  Weinstein's Lump- Sum Damages Figure

Samsung's last argument concerns Weinstein's lump-sum damages analysis. Samsung contends that Weinstein's damages calculation converts the lump-sum CSRIRO-Samsung license into a running royalty equivalent, despite evidence that none of the Samsung agreements produced in this case involved running-royalty payments and that Samsung has a preference for fixed

payments. [Dkt. No. 149], 14-15. Samsung thus contends that Weinstein's calculations depart from the record in this case. *Id.* at 15.

Red Rock responds that there is deposition testimony that Samsung has entered into licensing agreements that contemplate running royalty payments and that Samsung does not have a policy prohibiting such running royalties. [Dkt. No. 160], 11 (citing Chang Dep., [Dkt. No. 160-8], 54:18-21, 55:10-12). Even so, according to Red Rock, the difference between running royalties and lump sum royalties is not a basis for exclusion of Weinstein's opinion. [Dkt. No. 16], 11 (citing *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1302, 1304-1305 (Fed. Cir. 2015), *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212 (Fed. Cir. 2010), *TQP Development, LLC v. 1-800-Flowers.com, Inc.*, No. 2:11-CV-248-JRG-RSP, 2013 WL 12143821 (E.D. Tex. 2013), and *PerdiemCo, LLC v. Industrack LLC*, 2016 WL 6611488 (E.D. Tex. Nov. 9, 2016)). Red Rock contends that regardless, Weinstein used an effective running royalty analysis to provide a basis to evaluate otherwise identical lump sum licenses. [Dkt. No. 187], 5.

The Court finds its earlier statement instructive in this matter:

> While the [running royalty analysis] used by [Weinstein] is not the same as the one set forth in the [provided CSIRO L]icenses, that does not make it inappropriate. As described above and in the parties' briefing, [Weinstein] has explained the reasoning behind his damages theory. Whether his specific methodology and the reasoning are persuasive is a question for the jury. It is enough that [Weinstein] has expressed his opinion in a manner that could be helpful to the jury and that his opinion is relevant and supported by evidence.

*See TQP Dev.*, 2013 WL 12143821, at *3. Samsung does not distinguish its contentions from the above-cited case law, nor can it. Weinstein tied his theory to the facts of this case by "presenting a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical

negotation at issue" in his *Georgia-Pacific* analysis. *Id.* Thus, Samsung's motion is **DENIED** on this ground.

## III.     CONCLUSION

The Court will not exclude Weinstein's damages opinions nor Dr. Jones's related opinions. Samsung has the opportunity to conduct vigorous cross-examination of Weinstein and Dr. Jones, present contrary evidence, and seek careful instruction on the burden of proof at trial – these are the traditional and appropriate means of attacking admissible evidence. *Daubert*, 509 U.S. at 596, 113 S. Ct. 2786.   Accordingly, Samsung's *Daubert* motion to exclude certain opinions of Roy Weinstein and Dr. Christopher Jones is **DENIED**.

**SIGNED this 6th day of February, 2019.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE